# IN THE COURT OF APPEALS OF IOWA

No. 13-1222
Filed July 30, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KURTIS MICHAEL CULBERT,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt (plea) and Andrea J. Dryer (sentencing), Judges.


Kurtis Michael Culbert appeals his conviction, following a plea of guilty, for robbery in the second degree. **AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brian Williams, Assistant County Attorney, for appellee.


Considered by Danilson, C.J., Potterfield, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MILLER, S.J.**

Kurtis Michael Culbert appeals his conviction, following a plea of guilty, for robbery in the second degree, a class "C" felony, in violation of Iowa Code sections 711.1 and 711.3 (2011). He contends his plea of guilty was involuntary and his attorney thus rendered ineffective assistance by "not moving to withdraw the plea as involuntary."

## I. BACKGROUND FACTS.

Culbert was released from prison on a Thursday. The following Monday, April 11, 2011, a bank near a public library in Waterloo was robbed shortly before 9:53 a.m. The male robber demanded and received eighty dollars. Officers were dispatched to the bank at 9:53 a.m.

Overwhelming evidence pointed to Culbert as the robber. He had his sister take him to the library, which opened at 9:00 a.m. the morning of the robbery. He was seen on library surveillance cameras entering the library at about 9:07 a.m. in one set of clothes and carrying a backpack; leaving the library in the same clothes and with the backpack; re-entering the library in the same clothes and with the backpack; leaving the library at about 9:49 a.m. in other clothes that matched those worn by the robber; returning in the clothes worn by the robber at about 9:53 a.m.; and then again leaving the library about 9:55 a.m. carrying the backpack, wearing the original set of clothing. Two correctional services employees, apparently familiar with Culbert, saw the library's surveillance photos on the news. One of them called the Waterloo police and indicated they both identified the robbery suspect as Culbert.

Culbert had his sister take him to a homeless shelter in Cedar Rapids that evening. He was detained by the Cedar Rapids police and declined to speak with them. When detained, he had a backpack and clothing that matched those in the library's surveillance films of the robbery suspect.

Culbert was arrested by Waterloo authorities, returned to Waterloo, and charged with robbery in the second degree. He demanded speedy trial, later waived his right to speedy trial, and later yet waived his right to be tried within one year. Finally, just three weeks less than two years after his arrest, on March 22, 2013, Culbert pled guilty to the charge of robbery in the second degree. No motion in arrest of judgment was filed. In April 2013 the district court sentenced Culbert to a term of no more than ten years, a sentence involving a mandatory seventy percent.

Culbert filed an untimely pro se notice of appeal. Our supreme court granted an application for a delayed appeal.

## II.    ISSUES ON APPEAL.

Culbert asserts that as part of its inquiry concerning whether his guilty plea was voluntary, the district court "should have discussed with Culbert the waiver of his defenses and whether the coercive environment at the [Black Hawk County] jail influenced his desire to plead guilty." In a separate pro se brief Culbert argues the same points, and adds an assertion that he pled guilty in part because he "felt threatened by the prosecution."[1]

---

[1] At the April 2013 sentencing hearing Culbert explained that what he characterized as "threats by the prosecution" was his concern that the prosecution might "question my

Although represented by counsel, about one and one-half years after his arrest and being held in the Black Hawk County jail, Culbert began filing documents pro se in his pending criminal case. Such filings occurred on September 25, October 30, December 3, and December 4, 2012. In them Culbert now claimed he had committed the robbery because he had been threatened by prison inmates before leaving prison, that he was to rob a bank of $80,000, and that if he did not do so, or informed the police, he and his family would be harmed. He also complained of abuse by other jail inmates and by jail staff. The district court acknowledged Culbert's filings, took no action on them as they requested no specific relief related to his criminal case, had copies provided to counsel of record, and had copies provided to the Black Hawk County Sheriff or county attorney.

In his pro se filings, in the guilty plea proceeding, and at sentencing, Culbert acknowledged he had robbed the bank. The essence of his complaint of ineffective assistance of counsel appears to be that he was coerced to commit the robbery; his plea of guilty was coerced by mistreatment by jail inmates and staff and by feeling threatened by the prosecution; the district court did not inquire "whether he was giving up the right to raise a defense that he had been coerced into robbing the bank or whether his treatment at the county jail impelled him to plead guilty to leave that institution"; his guilty plea was therefore involuntary; his counsel should have recognized his plea was not voluntary and

family." Law enforcement had, however, questioned his mother and sister almost two years before his guilty plea and had received their cooperation.

should have moved to withdraw it; and that counsel rendered ineffective assistance by not doing so.

Iowa Rule of Criminal Procedure 2.8(2)(a) provides in part: "At any time before judgment, the court may permit a guilty plea to be withdrawn and a not guilty plea substituted." A motion to withdraw a guilty plea invokes the discretion of the trial court. *State v. Ramirez*, 400 N.W.2d 586, 588 (Iowa 1987). In situations in which a trial court has refused to allow withdrawal of a guilty plea, such refusal will be upheld where "'a defendant, with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty, enters such a plea without fear or persuasion.'" *Id.* (quoting *State v. Weckman*, 180 N.W.2d 434, 436 (Iowa 1970)).

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

A defendant alleging ineffective assistance of counsel must prove that (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). Both elements must be proved by a preponderance of the evidence. *State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011). The claim fails if either of the two elements is lacking in proof. *State v. Braggs*, 784 N.W.2d 31, 34 (Iowa 2010).

Proof of the first prong of an ineffective-assistance-of-counsel claim requires a showing that counsel's performance fell outside the normal range of competency. *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). "'Trial counsel's performance is measured objectively by determining whether counsel's assistance was reasonable under prevailing professional norms, considering all

the circumstances.'" *State v. Vance*, 790 N.W.2d 775, 785 (Iowa 2010) (quoting *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010)). Proof of the second prong requires a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). The burden to prove prejudice in the context of a guilty plea requires a defendant to prove that but for counsel's breach of duty, the party would not have pled guilty and would have elected to stand trial. *Carroll*, 767 N.W.2d at 644.

In general, claims of ineffective assistance of counsel are preserved for a possible postconviction proceeding to allow full development of the facts surrounding counsel's conduct. *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997). However, if we determine the record is adequate, we may resolve such a claim on direct appeal. *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012). In this case neither party suggests the record is inadequate for us to address Culbert's claim on direct appeal, and we believe it is adequate.

## IV. ANALYSIS.

Culbert points out certain facts that he appears to suggest indicate his guilty plea might have not been voluntary. Between the ages of six and eighteen, he at times lived in foster homes and group homes. His mother became his guardian and conservator when he became eighteen years of age, and she continued in that capacity at the time of his guilty plea. Culbert received disability benefits from 1998 until he was incarcerated in 2008. He was on medications for general anxiety, ADHD, and learning disorders. He does not, however, explain

how these facts relate to his apparent claim his counsel should have recognized his guilty plea was involuntary because of a possible defense—coercion by mistreatment while in jail, or feeling threatened by the prosecution. Perhaps his point is to suggest that they indicate an individual who is unusually susceptible to external and internal pressures.

Other facts, however, demonstrate the contrary. At the time of his guilty plea Culbert was thirty years of age. He was a high school graduate and had taken classes at two community colleges and at Kaplan University, including one and one-half years at one of the community colleges. Culbert had extensive experience with the criminal justice system. He had received a deferred judgment on an aggravated assault with a weapon in 2002. In 2008 he was convicted of assault with intent, received a suspended sentence that was later revoked, and spent time in prison. In 2008 he was also convicted of six counts of forgery, which also resulted in a later-revoked suspended sentence and time in prison. When arrested on the current robbery charge, Culbert invoked his right to remain silent and his right to appointed counsel. He made numerous filings pro se in this case.

The record of the guilty plea proceeding shows that the district court fully complied with Iowa Rule of Criminal Procedure 2.8(2). In addition, as stated by the State in its brief,

> the court conducted an exhaustive colloquy with the defendant, carefully advising him of the consequences of his plea in easily understandable language, probing his mental state and medications, and questioning him thoroughly about whether it was his own decision to plea[d] guilty.

The court painstakingly explored whether Culbert's guilty plea was voluntary. It inquired whether any threats or promises had been made to induce a guilty plea. Culbert assured that none had. The court assured that Culbert understood he was the only person who could decide whether he would plead guilty, and received and accepted his assurance that the choice to plead guilty was his "personal decision." The court, through an extensive colloquy with Culbert, inquired whether he needed additional time to consult with counsel, understood he could have a trial if he wished, and knew he alone had the final decision as to whether to plead guilty or go to trial. Most importantly perhaps, and contrary to Culbert's present allegations, the court received Culbert's assurances that no threats had led him to plead guilty and that his desire to come to court and plead guilty was not the result of feeling pressured to do so.[2]

We conclude the district court fully explored whether Culbert's guilty plea was voluntary, its finding that the plea was voluntary is strongly proved by the record, and counsel therefore did not breach an essential duty by not moving to withdraw the plea.

In addition, even if we were to find a breach of an essential duty, or to find that the record needed further development on that first prong of an ineffective-assistance-of-counsel claim, Culbert nevertheless cannot have been prejudiced by any such breach. The evidence of his guilt was overwhelming, and he does

---

[2] *See, e.g.*, *State v. Nosa*, 738 N.W.2d 658, 661 (Iowa Ct. App. 2007) (noting that where the record contains and consists of a defendant's assertion that no promises or inducements led to a guilty plea, a bare allegation to the contrary "neither meets a minimum threshold of credibility nor overcomes the presumption the record truly reflects the facts").

not show, or even assert, that if counsel had not breached a duty he would have gone to trial.

We affirm Culbert's conviction.

**AFFIRMED.**